## HANCOCK v. DIAMOND PLATE GLASS COMPANY ET AL.

[No. 5,435. Filed November 1, 1905. Rehearing denied January 4, 1906. Transfer denied February 15, 1906.]

1. APPEAL AND ERROR.—*Law of the Case.*—The law as declared on a former appeal is the law of the case, so far as applicable to the facts, through all subsequent stages. p. 359.

2. LANDLORD AND TENANT.—*Leases.*—*Gas-and-Oil Rights.*—The rights of the parties to a lease, which provides for an annual rental payment until wells are sunk and for a different payment after development, are not the same before and after development, the right of the landlord to terminate the lease for failure to develop not being available after development. *Diamond Plate Glass Co.* v. *Curless*, 22 Ind. App. 346, and *Diamond Plate Glass Co.* v. *Echelbarger*, 24 Ind. App. 124, explained. p. 359.

3. APPEAL AND ERROR.—*Law of the Case.*—*Dismissal.*—*New Action.*—Where the plaintiff, after a reversal by the Appellate Court, dismissed her action without prejudice, and afterwards filed an action for substantially the same cause, she is bound by such prior decision as the law of the case. p. 361.

4. SAME.—*Law of .the Case.*—*Pleadings.*—*Evidence.*—Where it appears by the evidence in the prior case that the new allegations in a subsequent case were considered in the prior case, a decision of the prior case on appeal is the law of the subsequent case. p. 361.

5. EVIDENCE.—*Records.*—*Judicial Notice.*—Appellate courts take judicial notice of their own records, either upon their own motion or at the suggestion of counsel. p. 362.

6. LANDLORD AND TENANT.—*Leases.*—*Gas and Oil.*—*Part Performance.*—Where a landlord leases his lands, the lessee agreeing to pay an annual rental until the land is developed and after development to pay a different sum, such lessee agreeing also to furnish to such landlord free gas, the furnishing of such gas, where no well was ever drilled and no offer made to drill one, does not constitute the taking possession for the purposes of the lease nor is it a part performance of the contract. p. 362.

7. APPEAL AND ERROR.—*Law of the Case.*—*Wrongful Decision.*—Although a prior decision of the case was wrong, it remains the law of the case through all subsequent stages. p. 363.

From Grant Superior Court; *B. F. Harness,* Judge.

Action by Anna E. Hancock against the Diamond Plate Glass Company and others. From a judgment for defendants, plaintiff appeals. *Affirmed*.

*B. C. Moon*, for appellant.

*Blacklidge, Shirley & Wolf*, for appellees.

ROBINSON, J.—Action by appellant to recover acreage rental upon a natural gas lease. Upon a special finding of facts the court stated a conclusion of law in appellee Diamond Plate Glass Company's favor. The correctness of the conclusion of law is the only question presented.

The facts found are in substance as follows: On July 23, 1889, appellant owned in fee and was in possession of certain land, and on that date, her husband joining, she executed to the Diamond Plate Glass Company, of Indiana, a gas-and-oil lease on the land, in two parts, the lease providing, among other things, that the lessee should have the right of ingress and egress to and from the tracts on which wells were to be located, the right to use the highways adjoining any part of the premises for the laying of mains and pipes for the transportation of gas, the lessee "to deliver free of charge to said first party, during the continuance of this lease, natural gas necessary for domestic use for dwelling-house now on said premises, or that may be hereafter erected thereon, not exceeding one," the gas to be delivered in a main or pipe at the house, the lessee to furnish, at the railroad, pipes necessary for conducting the gas and a superintendent to lay the same, the mains to belong to the lessee, the lessor to lay the pipes and make all necessary attachments. All gas obtained should be used in Howard county. "This grant and lease shall be deemed to commence at and run from the date of the signing hereof, and shall be deemed to have terminated whenever natural gas ceases to be used generally for manufacturing purposes in Howard county, Indiana, or whenever the second party, its heirs or assigns, shall fail to pay or tender the rental price herein agreed upon within sixty days of the date of its becoming

due, and, in the event of the termination thereof, for any cause, all rights and liabilities hereunder shall cease and terminate. And, as an additional consideration, said second party agrees to pay to said first party an annual rental of $100 each year for each gas-well drilled as aforesaid which produces gas in paying quantities sufficient for manufacturing purposes, said payments, as to each of said gas-wells, to commence and become due and payable on the first day of January after the completion thereof, and to continue thereafter annually during the continuance of this lease. Until the drilling of a gas-well on said premises by said second party it shall pay to said first party an annual rental of fifty-hundreths dollars an acre to be paid on the 1st day of January of each year, commencing 1891." If wells were not drilled in five years the rental to be $1 an acre. "Should any other gas-well or wells be put down on said 54.60-acre tract of land, other than herein stipulated for, then said second party, its heirs or assigns, shall thereafter be relieved and released from the payment of the rentals as in this contract provided. This contract shall extend to and be binding upon the heirs, executors and assigns of the parties thereto." In the second agreement, made on the same day, the lessor agreed not to drill or permit others to drill on the land during the continuance of the lease, and in case any other wells were put down the lessee and assigns should thereafter be released from the payment of any rentals; but otherwise the lessee's rights should not be affected. On October 13, 1890, the Diamond Plate Glass Company, of Indiana, assigned the lease to the Diamond Plate Glass Company, of Illinois, which latter company on April 1, 1895, assigned the lease to the Pittsburg Plate Glass Company, which company agreed to perform all the terms and conditions of the lease and pay all rentals thereafter maturing under the lease. On September 19, 1895, the Pittsburg company assigned the lease to the Logansport & Wabash Valley Gas Company, which

company held the lease until the surrender thereof. The Logansport company agreed to perform all the conditions of the lease and pay all rentals thereafter maturing. The assignment of the lease from the Diamond Plate Glass Company, of Illinois, to the Pittsburg Plate Glass Company, and from that company to the Logansport & Wabash Valley Gas Company, also embraced the assignment and conveyance of all gas lines situated within the territory covered by the leases thereby assigned which were used for supplying gas to the lessor. The Diamond Plate Glass Company, of Indiana, and the Diamond Plate Glass Company, of Illinois, entered upon the land and laid in the highways thereof pipes for the transportation of natural gas, and maintained the same until the assignment of the lease to the Pittsburg company, which company, when it became owner of the lease, entered upon the land for the purpose of maintaining thereon in the highways such pipes, and continued to maintain the same until it assigned the lease to the Logansport company, which company, when it became the owner of the lease, entered upon the land and maintained in the highways such pipes, and maintained upon and across the land in the highway, from the time it became the owner until December, 1900, about ten rods of one-inch pipe, which it continuously used for the transportation of gas produced elsewhere, and such pipe was a service-pipe used by appellees to furnish natural gas free of charge to the lessor under the lease. No gas or oil well has been drilled at any time upon the land, and no one of the holders of the lease ever offered to drill or put down any well, although appellant was always ready and willing for such well to be drilled by any of the holders of the lease at any time when the lease was in force. The rent maturing under the terms of the lease on January 1, 1891, 1892, 1893, 1894 and 1895 was paid, but the rent claimed by appellant as maturing on January 1, 1896, 1897, 1898, 1899 and 1900 is unpaid. Natural gas was used generally for manufactur-

ing purposes in Howard county from the time of the execution of the lease until the spring of 1902. Appellant has performed all the conditions of the contract on her part. The several holders of the lease furnished appellant natural gas, free of charge, necessary for domestic use for the dwelling-house on the land, from a date immediately after the execution of the lease to the latter part of December, 1900, according to the contract, but the Logansport & Wabash Valley Gas Company, on or about December 25, 1900, cut off the supply of gas to the house and removed its pipes and fixtures from the land, and has not since that date furnished appellant with gas or exercised any rights in the land under the lease. On January 6, 1900, the Logansport & Wabash Valley Gas Company signed, acknowledged and caused to be recorded a release of all rights under the lease, and the county recorder entered upon the margin of the lease, where the same was recorded, a reference to such cancelation. About the first day of January, 1896, the Logansport & Wabash Valley Gas Company, through its general manager, decided to terminate the lease, claiming the right to do so under the clause providing: "This grant and lease  *  *  *  shall be deemed to have terminated  *  *  *  whenever the second party, its heirs or assigns, shall fail to pay or tender the rental price herein agreed upon within sixty days of the date of its becoming due, and, in the event of the termination thereof, for any cause, all rights and liabilities hereunder shall cease and terminate." Pursuant to such election, or shortly thereafter, it notified appellant through its field man of such election, and that it would not thereafter continue the lease in force nor pay any rentals, but that the same was then and thereafter null and void. From and after January, 1896, the Logansport company has continuously refused to pay any rentals, and has never since that date claimed to hold any rights under the lease, but appellant has during that time refused to consent to the termination of the

lease and denied such appellee's right so to terminate the same until about December, 1900. On February 24, 1896, after appellant had been informed that the Logansport company claimed the lease to be no longer in force, on the ground that the same had been terminated by it under the above provision, appellant filed before a justice of the peace a complaint for rentals alleged to be due under the contract sued on in this case upon January 1, 1896, and the appellees Diamond Plate Glass Company, of Indiana, and the Pittsburg Plate Glass Company were made parties defendant. The complaint in that case alleged that at the date thereof the plaintiff therein and the plaintiff herein was the owner in fee and in possession of the real estate described in the complaint herein, and in that case and in the lease filed as an exhibit the plaintiff executed to the Diamond Plate Glass Company, of Indiana, a gas lease on the land, which was accepted by the company, by the terms of which lease the company agreed to pay to the plaintiff an annual rent of $54.60, to be paid on the 1st day of January, 1895, and each year thereafter until a well was drilled, but that no well had been drilled. The rental due January 1, 1896, was due and unpaid. In 1890 the lease was assigned by the lessee to the Diamond Plate Glass Company, of Illinois, which company on April 1, 1895, assigned the lease to the Pittsburg Plate Glass Company, by the terms of which assignment the assignee agreed, as part of the consideration, to perform all the terms of the lease and pay all rentals thereafter accruing which defendants had failed and refused to do. A copy of the lease was filed with and made part of the complaint, and demand for judgment for such rental was made. The lease filed as a part of that complaint was a copy of the part of the lease sued on in this action, which is first set out above, and no mention was made in the former suit of the second agreement above set out, and no averment was contained in the complaint in the former case as to possession taken

under the lease of any part of the land or of any part performance of the terms thereof by appellees or any of them. Counsel were employed by the Logansport & Wabash Valley Gas Company to appear in that action in behalf of the defendants, which counsel did appear and defend, but judgment was rendered against the defendants by the justice for the amount claimed by the plaintiff, from which judgment the defendants appealed to the Howard Circuit Court, and afterwards had the cause transferred on change of venue to the Tipton Circuit Court.   In the last-named court the defendants filed a demurrer to the complaint, which was overruled.   They filed a cross-complaint, alleging that the cross-complainant Logansport company was the holder of the lease, that the lease was null and void for uncertainty in the description of the land, that the cross-complainant had never been in possession of, nor drilled any well upon, the land, that the plaintiff claimed the lease was valid, and was then prosecuting an action to collect rentals, and was threatening to prosecute other actions against the cross-complainants on the lease, and praying that the lease be declared null and void and for an injunction. A motion to strike out this cross-complaint was sustained. Upon the trial of such cause it was the theory of the defendants that the lessees had the right to terminate the lease January 1, 1896, and had so terminated the same under the clause of the lease above set out, and that the failure to pay, for the period of sixty days after it became due, the rent accruing in 1896 was of itself notice of such termination.   The theory of plaintiff being that the clause for the termination of the lease upon the failure to pay rent within sixty days was for the benefit of the plaintiff, and that the lessees had no right to terminate the lease, it being further contended by the defendants that the contract was for an indefinite period and therefore at most a tenancy from year to year, which might be terminated by the lessees at the end of any year without notice.   Upon the trial of the cause

a finding and judgment was made in favor of the plaintiff for the sum claimed, from which judgment the defendants appealed to the Appellate Court, which reversed the cause and remanded the same to the Tipton Circuit Court, whereupon the cause was dismissed by the plaintiff at the April term, 1900, of that court.    The cause entitled *Diamond Plate Glass Co.* v. *Hancock* (1900), 24 Ind. App. 701, is the same cause as that originally brought by the plaintiff and dismissed as above stated.    The original case brought by the plaintiff was one of a series or number of cases instituted about the same time by a number of landowners acting in concert, of whom appellant was one, against appellee Diamond Plate Glass Company, for the collection of rentals alleged to be due under gas and oil leases executed by such landowners to such appellee.    During the pendency of such action, and until in December, 1900, the Logansport & Wabash Valley Gas Company continued to furnish free gas to appellant, as above set out.    In the Appellate Court the original cause was presented by counsel for the respective parties upon the respective theories above referred to, and in the decision of the cause it was adjudged:    "The questions presented on this appeal are the same as those in *Diamond Plate Glass Co.* v. *Curless* [1899], 22 Ind. App. 346, and in *Diamond Plate Glass Co.* v. *Echelbarger* [1900], 24 Ind. App. 124, and upon the authority of these cases the judgment is reversed." *Diamond Plate Glass Company* v. *Curless, supra,* was one of such series being prosecuted by such several landowners for the purpose of enforcing and continuing the respective leases on their several lands; the contract sued on in the Curless case being substantially identical with that sued on originally by appellant herein.    The case of *Diamond Plate Glass Co.* v. *Echelbarger, supra,* was one of such several suits so being prosecuted, and the contract therein sued on was substantially identical with that sued on in the case of

*Diamond Plate Glass Co.* v. *Curless, supra,* and in the original suit brought by appellant, except that in the Echelbarger case the contract further provided that the lessor should not "drill or suffer or permit others to drill or put down any other gas-well or wells on any part of the 100-acre tract 'during the continuance of said lease.'" The findings also set out extracts from the opinions in the Curless case and the Echelbarger case, and that the amount due appellant, if entitled to recover, is $376.60.

It is argued by counsel for appellees that the law in this case was established on the former appeal. *Diamond Plate Glass Co.* v. *Hancock, supra.* That appeal was decided upon the authority of *Diamond Plate Glass Co.* v. *Curless, supra,* and *Diamond Plate Glass Co.* v. *Echelbarger, supra,* and it is argued that the law of this case is the law as established in those two decisions. It is well settled that principles of law declared upon a former appeal remain the law of the case, so far as applicable, through all subsequent steps taken in the cause, and must be followed whether right or wrong. In *Hawley* v. *Smith* (1873), 45 Ind. 183, 201, it is said: "It having been held in the former action between the same parties, on the same cause of action, that the relation of principal and agent existed, we should regard the question as *res adjudicata* between the parties. This should be the rule, even if we doubted the correctness of the ruling when applied to other cases." See *Lillie* v. *Trentman* (1891), 130 Ind. 16; *Phenix Ins. Co.* v. *Rogers* (1894), 11 Ind. App. 72.

We do not understand it to be held in either the case of *Diamond Plate Glass Co.* v. *Curless, supra,* or the case of *Diamond Plate Glass Co.* v. *Echelbarger, supra,* that the principles pertaining to the relation of landlord and tenant are applicable to the contracts there in question whether possession has or has not been taken

under the contract. It was expressly held in the Curless case that possession never having been taken it could not be said that the relation of landlord and tenant ever existed. In the Echelbarger case possession was taken, and it was held that a tenancy was created, and, as the instrument did not fix· its duration, the statute provides that it shall be from year to year. In the leases in question in those two cases a consideration was expressed for the privilege of going upon the land and developing it for gas and oil, and an entirely new and different consideration in the event the land was developed and gas or oil was found. It manifestly was not the intention of the parties that this privilege could be continued indefinitely at the option of either party. When possession was taken by drilling a well that produced gas in paying quantities, a new consideration was named, and the lease very clearly shows the length of time the parties intended it should continue. But possession might be taken and the land remain undeveloped, and while it does appear in the case of *Diamond Plate Glass Co.* v. *Echelbarger, supra,* that possession was taken, it does not appear that possession was taken· and the land developed for oil or gas.

That the rights of the parties to the lease as to its continuance and termination are not the same under the lease before and after the development of the land for gas and oil, we think is plain from the decisions. In *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320, it is held that the option or right to drill, which seems to have run from year to year, might be terminated by the lessor by his refusal to accept the annual payment for another year, provided that the lessee was given such reasonable notice as would afford him a fair chance to discharge his obligation; and in *Hancock* v. *Diamond Plate Glass Co.* (1904), 162 Ind. 146, under a lease providing an annual rental for each producing gas-well, it is held that, if the lessee has taken possession and drilled a well more valuable than the

lessor anticipated when he made the lease, the lessor could not arbitrarily terminate the lease by refusing to accept the annual rental.

Upon the former appeal the judgment was reversed, and after the cause was remanded the case was dismissed. Afterward the action was again brought to recover the same rent for 1896 sought to be recovered in the former suit, and also the rent for the four succeeding years. The complaint in this action is substantially the same as upon the former appeal, except that the former complaint did not aver possession by the lessee and part performance of the lease, while the complaint in this appeal does. It is true the dismissal after the former appeal was without prejudice, but we fail to see any sufficient reason for holding that appellant is in a better position after having dismissed the case and refiled it with additional averments in her complaint than she would have been had she added these additional averments by amending the original pleading and appealed a second time without dismissing.

Counsel for appellant argues that, if this case is governed by the law of the case as declared on the former appeal, such law of the case extends only to the law upon the facts as there pleaded; and that the complaint in that case did not aver possession by the lessee or part performance of the lease, while in this case the complaint avers both.

The case decided on the former appeal originated before a justice of the peace, and while the pleadings do not disclose that the questions of possession and part performance were presented by the pleadings, yet an examination of the record of that appeal discloses that those questions were presented, without objection, by the evidence.

It is held that an appellate tribunal takes judicial notice of its own records, and that it may, in the consideration of

a case before it, either on its own motion or at the suggestion of counsel, inspect its records. *Cluggish v. Koons* (1896), 15 Ind. App. 599; *Washington, etc., R. Co. v. Coeur D'Alene R., etc., Co.* (1895), 160 U. S. 101, 40 L. Ed. 355, 16 Sup. Ct. 239; *Denney v. State, ex rel.* (1896), 144 Ind. 503, 31 L. R. A. 726. In the case last cited the court said: "Some question having been made as to whether we can thus take notice of other records in this court, in considering a case at bar, we may here remark that we have no doubt that this may be done, whether the court make such inspection of its own motion or on the suggestion of counsel."

The findings show that no gas or oil well has been drilled at any time upon the land, and that no one of the holders of the lease ever offered to drill or put down any well; that is, possession was not taken by developing the land for oil and gas. It was found that pipes for the transportation of gas were laid and maintained in the highway and that the several holders of the lease furnished appellant free gas for the dwelling-house on the land. This finding is substantially the same as the undisputed evidence as to these questions upon the former appeal. On the former appeal it was held that this did not constitute possession. It is true, the finding states that the several holders of the lease furnished appellant free gas until the latter part of December, 1900, "as above found." But this apparent conclusion is to be considered in connection with the primary facts found. And when these primary facts are considered together with the language used in the above finding, we do not think the court intended to find that there had been a part performance of the contract by the furnishing of free gas. If appellees had the right to terminate the lease and had terminated it, under the law of the case, we fail to see how the continued use of gas by appellant from appellees' pipes could impose upon appellees the consequences of a part performance of the lease.

In *Diamond Plate Glass Co.* v. *Curless, supra,* it is said: "As we construe the instrument in question, it was an agreement whereby. appellants, until possession was taken by them, agreed to pay an annual sum for the right to go upon the land at any time within the year and prospect for gas and oil; that the agreement ran only from year to year; and that, at the end of any year, either party could terminate the agreement, the one by refusing to accept, and the other by refusing to pay the stipulated sum. * * * Possession never having been taken, by the terms of the instrument, it can not be said that the relation of landlord and tenant ever existed. * * * Construing the instrument in question, as we do, to be an agreement whereby a right was granted for a stipulated sum payable from year to year, and continuing from year to year if both parties desired that it should so continue, it could be terminated by either party at the expiration of such period, and a failure to pay the stipulated sum as provided in the agreement, or a refusal under the terms of the agreement to pay such sum, would work its termination."

This doctrine was disapproved in the case of *Hancock* v. *Diamond Plate Glass Co.* (1904), 162 Ind. 146, and is of no effect, except so far as it is to be applied as the law of the case. It is quite clear that under the rule declared in that case appellant would be entitled to recover in this action. But the law declared upon the former appeal, although wrong, remains the law of the case, so far as applicable, upon this the second appeal. See *Board, etc.,* v. *Bonebrake* (1896), 146 Ind. 311.

Judgment affirmed.